UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM C. BARNETT, II                                                          PLAINTIFF

v.                                                       CIVIL ACTION NO. 3:13-CV-32-S

LOUISVILLE METRO POLICE DEPARTMENT, et al.                      DEFENDANTS

**FINDINGS OF FACT
CONCLUSIONS OF LAW
AND RECOMMENDATION**

**FINDINGS OF FACT**

The present lawsuit is a *pro se* civil rights suit.  The Plaintiff, William C. Barnett,

II, is a former sergeant with the Louisville Metro Police Department (LMPD).  The Defendants

include the LMPD and Sgt. John Lewis, a member of the LMPD Public Integrity Unit (PIU).

The events that led to the lawsuit occurred on July 16, 2013.  On that date, then Sgt. Barnett

called the LMPD to come to his residence located in Louisville, Kentucky "for help with his out-

of-control sixteen (16)-year-old daughter," K.B. (DN 12).  K.B. had just returned that day to her

father's home after living with her maternal grandparents in Oldham County, Kentucky, for

approximately a month.[1]

Two LMPD officers, Alan Tatum and Russell Montfort, responded to the

domestic dispute call.  When they realized that one of their own superior officers, Sgt. Barnett,

was involved, they contacted their platoon sargent, Sgt. Ruby Ellison, for guidance.  PIU

---

[1]  K.B. apparently ran away from her father's home after an earlier altercation between
the two on May 20th that also involved the LMPD.  Barnett learned of her whereabouts and had
criminal charges of custodial interference placed against K.B.'s grandmother, who pled guilty to
a misdemeanor offense in Oldham County the morning before K.B. returned to her father's home
in Louisville.

officers, Sgts. John Lewis and Rick Polin, were dispatched to the scene.[2]  Prior to the arrival of

Sgts. Lewis and Polin, Barnett and K.B. had been located in the kitchen of the family home.

After Sgts. Lewis and Polin arrived, they kept Barnett and his daughter separated so that an

investigation could be safely conducted to determine just exactly what had occurred that

evening.

Barnett had at that point already left the kitchen voluntarily and gone out onto the

front porch of his home to await the arrival of the PIU officers.  K.B. remained in the kitchen.

Once on the scene, Sgt. Lewis stood on the front porch with Barnett and discussed what had

happened.  Barnett explained to Lewis that after he picked up his daughter from her aunt's home

that afternoon, they returned to his residence where he prepared dinner.  He instructed K.B. to

clean the bathroom. When he inspected the bathroom, he noticed that the bathtub had not been

scrubbed.  Barnett then told his daughter to scrub out the bathtub.  According to him, she insisted

that she had done so, and refused to clean it again.

A heated argument then ensued. Barnett claims that during their exchange his

daughter attempted to strike him while threatening to call the police.  After she allegedly kicked

him in the groin, Barnett pushed her away.  K.B. fell backward into the bathtub while grabbing

the shower curtain, all the while yelling at him and threatening to contact the police.  Barnett

responded that he would contact them himself and immediately proceeded to do so.

K.B. in her statement that evening agreed that her father had asked her to clean

the bathroom.  She insisted, however, that she had done so and had already scrubbed the bathtub

---

[2]  Prior to that time, Sgt. John Lewis had attempted to directly interview Barnett's older
daughter concerning the earlier May 20 incident involving Barnett and his younger daughter.
Barnett refused to permit Sgt. Lewis to interview the older daughter, who was still a juvenile.

once.  K.B. claimed that her father insisted that she do it again.  When she protested, he slapped

her in the face and pushed her backwards into the bathtub.  K.B. slowed her fall by grabbing the

shower curtain, but fell into the bathtub where her father continued to physically assault her by

twisting her arm in an alleged effort to break it.[3]

        After Lewis obtained Sgt. Barnett's statement, Barnett informed Lewis that he

had recently had rotator cuff surgery on his shoulder.  Barnett told Sgt. Lewis and Major Fox,

who was also present on the front porch, that he intended to return inside the home to recover his

arm sling.  Lewis advised Barnett that he would not be permitted to return inside his home

because "you are a suspect in a domestic violence [investigation]."  Lewis added that Barnett was

not in charge of the scene and that he would remain outside the home.  Lewis offered  that if

Barnett would tell the officers where his sling was located, they would be happy to retrieve it for

him, but he would not be permitted back in the house at that moment.

        Barnett then responded that the police officers would only be allowed by him to

go into the kitchen of his home.  In his words, "That's as far as you can go.  'Cuz that's where

she [K.B.] is."  (DN 13, Ex. 1, Lewis recording, p. 4).  At that point, Sgt. Lewis re-entered the

home to check on the status of a statement being taken from K.B.[4]  After Lewis heard K.B.

---

[3] While on the scene that evening, Sgt. Lewis audio recorded his interactions with
Barnett and the other officers.  A transcript of the audio recording is included with the cross-
motion of the Defendants for summary judgment, along with investigative statements provided
by Barnett and K.B. (DN 13, Ex. 1, Lewis recording).  Lewis has attested to the accuracy of the
recording and transcript (DN 25).  The transcript and statements are the basis for the findings of
fact set forth herein.  Barnett has not provided any contrary proof in support of his own motion
for summary judgment.

[4] During her statement K.B. confirmed that she had left her father's home a month earlier
in mid-May to live with her grandparents and that her father had pursued charges of custodial
interference against her grandmother, who earlier that same morning had pled guilty to a

explain how her father had slapped her knocking her into the bathtub and had allegedly attempted to break her arm by twisting it, Sgt. Lewis decided that K.B. would have to be removed from the home for her own safety (DN 13, Ex. 1, Lewis recording 2, p. 1). When Sgt. Lewis advised Barnett of this decision, Barnett denied that he was a "suspect" in a domestic dispute investigation, and told Sgt. Lewis that, by court order, K.B. could not go to her mother's home.

Sgt. Lewis confirmed from Barnett that K.B.'s mother, LMPD Lt. Lavita Chavous, did have visitation rights with K.B. Lt. Chavous was then summoned to the scene to pick up her daughter. At that point, Barnett insisted that he was going to re-enter his home. Sgt. Lewis advised Barnett that he must remain outside the home until the officers inside had finished completing the report with K.B. K.B. would then be brought out of the home and placed in a police car so that Sgt. Barnett could re-enter. Barnett and Lewis then argued with one another about the situation as Lewis insisted that Barnett remain outside the home until his daughter was removed.

While this exchange was occurring, K.B. was inside the home gathering some of her personal possessions to take with her. An LMPD officer escorted her to her bedroom and to her sister's bedroom as she collected her clothing in a black garbage bag. Outside, Major Fox and Sgt. Lewis discussed the situation. In Major Fox's view, matters would proceed more smoothly if Sgt. Barnett could be permitted to re-enter the home so that he would not have any interaction with his ex-wife, Lt. Chavous, who was expected to arrive at the scene in a few minutes to transport her daughter.

---

misdemeanor charge in order to avoid further court proceedings and costs. (Id., Ex. 1, p. 8).

Sgt. Lewis advised Officer Montfort, who was inside completing the paperwork with K.B., that the best thing to do would be to go ahead and take K.B. outside to a police car wherein she could complete the unfinished portion of her statement. Sgt. Lewis instructed K.B. to go with Officer Montfort to his patrol car. Sgt. Lewis obtained the police report number to provide Barnett, whom he would then permit to return inside the home (DN 13, Ex. 1, Lewis statement no. 1, pp. 6-7).

Lt. Chavous arrived at the scene and spoke briefly with Sgt. Lewis. She advised him that she anticipated Sgt. Barnett would take out a warrant on her. As the two were speaking, Barnett walked over to Montfort's police cruiser and removed the black bag containing K.B.'s clothing items. Barnett then proceeded to begin walking back up the hill toward his home with the garbage bag of clothing. Sgt. Lewis ordered Barnett to drop the clothing bag. According to Barnett, Sgt. Lewis stood in front of him and physically placed his hand in the center of Barnett's chest briefly as Barnett attempted to take the bag and re-enter his home.

Barnett advised Lewis that he did not know what his daughter had placed into the garbage bag. Lewis responded that "it doesn't matter." (DN 13, Ex. 1, Lewis recording 2, p. 9). Barnett insisted that it did matter because the bag had been taken from his home. Barnett was permitted soon thereafter to re-enter his home and inspect the contents of the garbage bag which contained his daughter's clothing. Sgt. Lewis, however, did briefly prohibit Barnett from re-entering his home with the bag.

Eventually, after he inspected the contents of the bag, Barnett permitted K.B. to take several changes of clothes with her. K.B. then left the scene with her mother who transported her to The Safe Place. Barnett later claimed that five $100 bills were missing from

his bedroom dresser. Although he initially suggested that the police may have been involved, Barnett subsequently clarified that he did not suspect any police officer of having removed the money, but rather believed that his daughter had stolen it. Sgt. Lewis, from his perspective, concluded at the scene that "the overriding factor here is that there - - there is a legitimate degree of fear for her [K.B.'s]safety here. This is, uh, the second time this has happened ..." (DN 13, Ex. 1, Lewis recording 2, p. 13).

In December of 2012, Barnett filed suit in the Circuit Court of Jefferson County, Kentucky, against the LMPD and Sgt. John Lewis (DN 1, Complaint). Barnett alleged in his complaint that Sgt. Lewis conducted a warrantless search of Barnett's home, removed property from the residence without a warrant or other legal authority, and physically prevented Barnett from re-entering his home "by striking the Plaintiff in the chest with his hand." (DN 1, Ex. 1, Complaint, p. 1, ¶¶3-5). Barnett further alleged that Sgt. Lewis "attempted physically [to] take property from the Plaintiff, property that had been removed from a police vehicle by the Plaintiff." (Id.). The complaint sought compensation for "mental anguish, pain and suffering, and violation of Plaintiff's civil rights and physical assault by Sgt. John Lewis." (Id., p. 2).

The LMPD and Sgt. Lewis removed Barnett's complaint to federal court in January of 2013 (DN 1). Prior to removal, the Defendants filed an answer to the complaint (DN 1, Ex. 3, Answer). In their answer, Defendants denied the material allegations of the complaint, except for the allegation that Barnett had called the LMPD to come to his home in July of 2012. (Id., p. 1, ¶2). , Defendants raised various defenses including that Sgt. Lewis acted in good faith in accordance with established law so as to be entitled to qualified immunity (DN 1, Ex. 3, Answer, ¶5). Defendants also asserted that the LMPD is not an entity capable of being sued,

unlike the Louisville Metro Government (Id.).

In February of 2013, after the parties filed their Rule 26(f) planning report (DN 5) and conference statements (DN 6, 7), the Magistrate Judge entered a Rule 16 scheduling order setting forth various discovery and case management deadlines (DN 9). The following month, Barnett filed a motion for summary judgment (DN 12). In his motion, Barnett seeks judgment in his favor on two claims: (1) that Sgt. Lewis failed to read Barnett his *Miranda* rights before Lewis interrogated Barnett at a time when Barnett was not free to leave the scene; and (2) Lewis allowed certain unnamed LMPD officers to conduct a search of the second floor of Barnett's home, and to remove property therefrom, without a warrant or Barnett's consent in violation of his Fourth Amendment rights (DN 12, motion, pp. 2-3).

The LMPD and Lewis filed a response and cross-motion for summary judgment (DN 13, Cross-motion). Defendants in support of their cross-motion filed transcripts of the audio recordings made by Sgt. Lewis at the scene that evening (DN 13, Cross-motion, Ex. 1), along with investigative statements made by Barnett and his daughter, K.B. (Id. Ex. 3). Defendants argue in their memorandum that: Barnett's claims against the LMPD must be dismissed because it is not an entity subject to suit; Barnett has abandoned his claim that Sgt. Lewis allowed $500 to be taken from Barnett's home; Barnett's alleged Fifth Amendment claim fails to allege a cognizable civil rights claim against the state-actor Defendants; Barnett's official capacity claim against Sgt. Lewis must be dismissed as being a *de facto* claim against the city of Louisville; and that Sgt. Lewis in his individual capacity did not violate any of Barnett's Fourth Amendment rights where LMPD officers entered Barnett's home with his consent and public safety required them to do so.

On this latter issue, Defendants argue that any property removed from Barnett's home by his daughter K.B. was not removed by Sgt. Lewis, was not taken off the property, and ultimately was taken with the express permission of Barnett (DN 13, pp. 5-7). Finally, Defendants argue that Barnett's claim of excessive force related to the placement of Sgt. Lewis's hand on Barnett's chest fails as a matter of law since the audio recording demonstrates that Sgt. Lewis did not place his hand on Barnett, and even had he done so, no unreasonable amount of force was used (DN 13, pp. 7-8). Alternatively, Defendants contend that Sgt. Lewis is entitled to qualified immunity in the event that the Court determines that some constitutional violation occurred merely because Sgt. Lewis touched Barnett.

Barnett has filed a response to the cross-motion for summary judgment and a reply in support of his own motion (DN 16, 20). Defendants have likewise filed a reply in support of their cross-motion (DN 19). Accordingly, the motion and cross-motion for summary judgment are now both perfected.

## CONCLUSIONS OF LAW

*a.*      *The Summary Judgment Standard.*

Under Rule 56(a) of the Federal Rules of Civil Procedure, a federal court shall grant a party summary judgment "if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, along with any affidavits, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

8

*See Yeschick v. Mineta*, 521 F.3d 498, 502 (6ᵗʰ Cir. 2008).

The moving party bears the burden to satisfy the requirements of the Rule. *Davis v. Marshal County Ambulance Services*, Case No. 1:11-0041, 2012 WL 5247281 at *3 (M.D. Tenn. Oct. 22, 2012) (citing *Martin v. Kelley*, 803 F.2d 236, 239 n. 4 (6ᵗʰ Cir. 1986). This burden requires the party that seeks summary judgment in its favor to establish the absence of any genuine issues of material fact. *Id.* (citing *Simms v. Memphis Processors, Inc.*, 926 F.2d 524, 526 (1991)). Once the movant satisfies this initial burden to demonstrate the absence of a genuine issue of material fact, then the non-moving party must set forth specific facts that establish a genuine issue for trial. *Id.* (citing *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6ᵗʰ Cir. 1989)).

In this respect, "the respondent must adduce more than a scintilla of evidence to overcome the motion ... [and] must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6ᵗʰ Cir. 1989). Put differently, the respondent must do more than show that "some metaphysical doubt as to the material facts" exists so that "where the record taken as a whole could not leave a rational trier of fact to find for the respondent, the motion should be granted." *Street*, 886 F.2d at 1480.

When ruling on a motion for summary judgment, the court is required to construe the evidence in a light most favorable to the party that opposes the motion. *Davis*, 2012 WL 5247281 at *4 (quoting *Bohn Alum. & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 527 (6ᵗʰ Cir. 1962)). Even complex cases or cases that involve an issue of a party's state of mind are not necessarily inappropriate for summary judgment under Rule 56. *Id.* (citing *Street*, 886 F.2d at

1479-80). The substantive law that governs the case will determine whether issues of fact, if any, are material, and any heightened burden of proof that is imposed by this substantive law must be satisfied if the responding party hopes to avoid summary judgment. *Id*.

No duty is imposed on the trial court to search through the entire record in an effort to disprove the existence of a genuine issue of material fact when the respondent has established none. *Id*. Further, the respondent cannot rely upon the mere hope that a finder of fact will disbelieve the moving party's denial of the disputed fact, but instead must present affirmative evidence in order to defeat an otherwise properly supported motion for summary judgment. *Id*. *See Whitco, LLC v. Republic Services of Tenn.*, 818 F. Supp.2d 1040, 1045, 1047 (M.D. Tenn. 2011) (The mere possibility of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment.). In essence, "a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue." *Cox v. Ky. Dept. of Trans.*, 53 F.3d 146, 149 (6th Cir. 1995).

### b. The §1983 Standard.

Plaintiff Barnett in his pro se complaint generally alleges a violation of his constitutional rights. The complaint itself does not identify any specific provision of the federal Constitution. Rather, it at most refers to the violation of certain undesignated "civil rights." (DN 1, Complaint, p. 2, ¶1). The facts alleged in paragraphs 3-5 all relate to the warrantless entry and alleged search of Barnett's home, as well as Sgt. Lewis's actions in physically preventing Barnett from re-entering the home during the course of the investigation.

The first mention of the federal Constitution is found in Barnett's motion for

summary judgment (DN 12, Motion). Barnett alleges on pp. 2-3 of his motion that his Fifth and Fourth Amendment rights were violated (Id. at 2-3). The complaint itself, however, makes no mention of either of these amendments or even 42 U.S.C. §1983 for that matter.

This failure of Barnett in his complaint to cite to the provisions of 42 U.S.C. §1983, or even to refer to the specific provisions of the federal Constitution that he claims the Defendants violated, is not dispositive. The pleadings of pro se litigants, even former law enforcement officers, are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972). Further, where no motion to dismiss for failure to state a claim has been filed pursuant to Rule 12(b)(6), but the parties are proceeding by way of summary judgment, the federal courts are not limited to the formal issues framed by the pleadings, but are fully entitled to "consider the issues presented by the other material offered by the parties on the motion [for summary judgment] ..." *Spandafore v. Gardner*, 330 F.3d 849, 852-53 (6th Cir. 2003) (citing *Flint v. Ky. Dept. of Corrections*, 2370 F.3d 340, 348 (6th Cir. 2001)).

Barnett has provided a factually detailed description of the alleged constitutional violations, and, in his motion for summary judgment, has identified the specific provisions of the federal Constitution that he alleges are involved. Accordingly, while he may not have specifically cited to §1983, examination of his pleading and motion papers has adequately clarified his claims, all of which arise from the events of July 16, 2012. *See Barrett v. Steubenville City Schools*, 388 F.3d 967, 971 (6th Cir. 2004), *cert. denied*, 546 U.S. 813 (2005). We therefore turn to the requirements needed to state a claim under 42 U.S.C. §1983.

First, it must be noted that §1983 of itself creates no substantive rights on which a plaintiff may recover damages. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Bray v.*

*Planned Parenthood Columbia Willamett, Inc.*, Case No. 2:10-CV-054, 2010 WL 3666978 at *2 (S.D. Ohio 2010). Section 1983 instead acts merely to provide a mechanism by which a plaintiff may obtain a statutorily created remedy for the deprivation of a federal constitutional or statutory right by a state actor. *Id.* Two basic requirements must exist if a plaintiff hopes to recover on his or her §1983 claim. First, there must be the deprivation of a right, a privilege or an immunity that is guaranteed by the federal Constitution or other laws of the United States. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Barrett*, 388 F.3d at 971. Second, this deprivation of a federal right must be caused by a person who is acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Harbin-Bey v. Rutter*, 420 F.3d 571, 757 (6th Cir. 2005).

### c. *Claims Against LMPD and Lewis in His Official Capacity..*

"Persons" who may be potentially liable under §1983 include not only natural persons acting under color of state law, but also may include municipal corporations and other bodies politic, as well. *Monell v. Dept. of Soc. Srvs.*, 436 U.S. 658, 688 (1978); *Mumford v. Basinski* 105 F.3d 264, 267 (6th Cir. 1997), *cert. denied*, 522 U.S. 914 (1997). What is not included within the category of such "persons" is a municipal police department, such as the LMPD. *See gen., Irvin v. Clarksville Gas & Water Depart.*, Case No. 3:11-CV-529, 2011 WL 3565248 at *3 (M.D. Tenn. Aug. 12, 2011) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a §1983 suit.") (citing *Mathes v. Metropolitan Government of Nashville*, Case No. 3:10-CV-0496, 2010 WL 3341889 at *2 (M.D. Tenn. Aug. 25, 2010)).

This same prohibition applies to the LMPD, which is not a proper defendant in a

§1983 action. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the [Jefferson County] police department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of [the plaintiff's] ... complaint.") (citing *Smallwood v. Jefferson County Government*, 743 F.Supp. 502, 503 (W.D.Ky. 1990); KRS §95.010(e) (Baldwin 1989)). Because the LMPD is not a proper party defendant, as opposed to the Louisville Metropolitan Government, Barnett's claims against the LMPD should be dismissed with prejudice. *See gen., Brown v. Marshall County, Ky*, 394 F.2d 498, 500 (6th Cir. 1968) ("Under Kentucky law a 'county is a quasi-municipal corporation and, as such, is a suable entity.'") (quoting *Howell v. Haney*, 330 S.W.2d 941, 943 (Ky. 1959)).

      The next problem that confronts Barnett involves the capacity in which he has sued Sgt. Lewis. Nowhere in his complaint or his motion papers does Barnett identify the capacity in which he has sued Lewis, i.e., official or individual capacity. Persons who are sued in their individual capacity under §1983 may be held liable based only on their own unconstitutional behavior. *Hayerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir.2011) ("Personal involvement is necessary to establish §1983 liability.").

      A claim against a §1983 defendant in his or her official capacity is in essence simply another means of pleading an action against the governmental entity which employs the officer. *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691). *See also, Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, to the extent that Barnett has sued Lewis in his official capacity, Barnett has sued the Louisville-Jefferson County Metro Government. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989); *Fox v. Van Oosterum*,

176 F.3d 342, 347-48 (6th Cir. 1999).

When a §1983 claim is brought against a governmental entity such as the Louisville Metro Government, two distinct issues must be considered: whether the injuries alleged by the plaintiff were caused by a constitutional violation; and if so, whether the governmental entity is responsible for that violation. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992); *Cash v. Hamilton County*, 388 F.3d 539, 542 (6th Cir. 2004).

If the plaintiff cannot establish a constitutional violation by any of the named individual defendants, then the municipal or governmental defendant cannot be held liable under §1983. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 879-80 (6th Cir.), *cert. denied*, 31 U.S. 874 (2000). Even when a constitutional injury is shown to be inflicted by an employee or agent of the defendant governmental entity, such entity will not be held liable unless a sufficient causal link between the violation and a municipal policy or custom is established by the plaintiff. *Ward of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997); *Monell*, 436 U.S. at 691; *Haverstick Enterprises v. Financial Federal Credit*, 32 F.3d 989, 996 n. 8 (6th Cir. 1994) ("Section 1983 actions against municipalities [or counties] carries certain special elements, including proof (1) that the city [or county] pursued an official custom or policy of failing to adequately train, supervise, or discipline officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom.") (citing *City of Canton v. Harriss*, 489 U.S. 378, 388 (1989)). Consequently, a §1983 plaintiff must show that the unconstitutional policy or custom existed, that it was connected to the county, and that the policy

or custom caused the alleged constitutional violation in order for the governmental defendant to be held liable under §1983. *Napier v. Madison County, Ky*, 238 F.3d 739, 743 (6th Cir. 2001); *Garner v. Memphis Police Dept.*, 8 F.3d 358, 363-64 (6th Cir. 1993).

Here, Barnett has not shown, nor even alleged, that the claimed constitutional violations at issue are the result of an official policy or custom of the Louisville Metro Government, as opposed to the actions of an individual officer. In other words, he has not alleged, nor does the record reveal, any causal connection between the actions taken by Sgt. Lewis on the evening of July 16, 2012, and any governmental policy or custom. Consequently, to the extent that Barnett has a claim against Sgt. Lewis in his official capacity, such claim must be dismissed with prejudice given the absence of any proof that an existing, unconstitutional municipal policy or custom caused the alleged injuries claimed by Barnett. *Tuttle*, 471 U.S. at 823-24 ("Proof of the incident [must] include proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker.").

**d.**      ***Claims Against Sgt. Lewis in His Individual Capacity and Qualified Immunity.***

As stated above, the complaint does not specify in what capacity Sgt. Lewis is sued. "Although it is preferable that plaintiff explicitly state whether a defendant is sued in his or her individual capacity, the failure to do so is not fatal if the complaint or other filed documents provide sufficient notice to the defendant that he is being sued as an individual." *White v. Hamilton County Jail*, 2011 WL 864855 (E.D. Tenn.), citing *Moore v. City of Harrinan*, 272 F.3d 769 (6th Cir. 2001). There are indications in the complaint of Barnett's intention to sue Lewis in his individual capacity as a state actor. Barnett's complaint seeks compensatory and

punitive damages. Those damages are not available against a municipal or official capacity defendant. However, that alone is not sufficient to put an official on notice that he is being sued in his individual capacity. *See Sheperd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002). Additionally, each of the factual allegations in the complaint claims that "Sgt. John Lewis" violated Barnett's rights in a particular way. No factual allegations or specific legal claims are made against Defendant, LMPD. Taken as a whole, there is room for argument over whether on its face the complaint stated individual capacity claims. However, there can be no doubt that Sgt. Lewis read the complaint as making claims against him in his individual capacity based on the answer he filed to the complaint in which he raised the defense of qualified immunity. Further, Sgt. Lewis's motion for summary judgment includes an argument that he is entitled to qualified immunity. Therefore, the Court will construe the complaint to include individual capacity claims against Defendant Lewis.

Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. 1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the Plaintiff cannot establish each of these elements, qualified immunity must be granted. It is now clear that district courts have the discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 566 U.S. __, 129 S.Ct. 808, 172 L.Ed.2d 569 (2009). In this case, it is not necessary to look past the first prong, since Barnett fails to establish that Lewis's actions violated a constitutional right. *Radvansky v. City of Olmested Falls*, 395 F.3d 291, 302 (6th Cir. 2005), quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).

### 1.     *The Fifth Amendment Claim.*

Barnett alleges in his motion for summary judgment that his Fifth Amendment rights were violated when Sgt. Lewis failed to provide Barnett with *Miranda* warnings prior to taking a statement from Barnett on the porch of his home that evening after Barnett summoned the police to respond to a domestic dispute.  Barnett apparently believes that he was in custody at the time and was being interrogated so as to be entitled to receive a *Miranda* warning from Lewis before giving a statement.  There are a number of significant problems with this reasoning by Barnett.

First, the Fifth Amendment is made applicable to the states by the Fourteenth Amendment.  *Malloy v. Hogan*, 378 U.S. 1 (1964).  Barnett nowhere has alleged a Fourteenth Amendment violation.  Even if we assume that his complaint and motion papers do so, he is still unable to survive a defendant's motion for summary judgment.  This is so because the Fifth Amendment expressly provides that "[n]o person ... shall be compelled *in any criminal case* to be a *witness* against himself." U.S. Const. Amend. 5 (emphasis added).  In other words, no violation of the Fifth Amendment can occur until and unless a §1983 plaintiff is prosecuted for a crime and compelled to be a witness against himself in the criminal case.  *See Chavez v. Martinez*, 538 U.S. 760, 766 (2003) ("In our view, a 'criminal case' at the very least requires the initiation of legal proceedings.") (citing *Blyew v. United States*, 13 Wal. 581, 595, 20 L. Ed. 638 (1872)).  Thus, even were Barnett able to bring a Fifth Amendment claim against a state actor, he would not be entitled to relief as Barnett's statements were never used against him in a criminal case.  *See gen., United States v. Antelope*, 395 F.3d 1128, 1141 (9th Cir. 2005) ("Critical to the

reasoning of all six justices [in *Chavez*] was the simple principle that the scope of the Fifth Amendment's efficacy is narrower when used as a sword in a civil suit than when used as a shield against criminal prosecution."). Sgt. Lewis's undisputed failure to read *Miranda* warnings to Barnett therefore cannot be grounds for a §1983 action given the absence of a criminal case in which Barnett was compelled to be a witness against himself.

Second, Barnett's Fifth Amendment claim fares no better when it is construed as being a Fourteenth Amendment claim. Barnett still cannot prevail because he cannot meet the threshold issue. Barnett must first establish that a genuine issue of material fact exists as to whether a custodial interrogation occurred. Absent a custodial interrogation, the requirement to recite *Miranda* warnings is not triggered. *See United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).

Interrogation will exist when police officers engage in words or actions that they should know are reasonably likely to elicit an incriminating response. *United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003) (citing *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980)). *See gen., United States v. Marrero*, 651 F.3d 453, 470 (6th Cir. 2011) ("After *Miranda*, 'statements made by the defendant in response to interrogation while in police custody are not admissible unless the defendant has been apprised of the constitutional right against self-incrimination and has validly waived this right.'") (quoting *United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003)); *Hoffner v. Bradshaw*, 622 F.3d 487, 511-12 (6th Cir. 2010) ("Procedural safeguards of *Miranda* apply only to suspects subject to custodial interrogation.").

The undisputed facts as set forth in the transcripts of the audio recording and

statements of both Barnett and his daughter conclusively establish that Barnett was not subject to custodial interrogation because he was not in custody.  As explained in *Berkemer v. McCarty*, 468 U.S. at 442, "the only relevant inquiry for determining whether an individual is in custody 'is how a reasonable man in the suspect's position would have understood his situation.'"  In other words, the Court is to look at the circumstances surrounding the alleged interrogation and determine if under those circumstances a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave.  *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Here, the material facts of record do not raise a genuine dispute as to whether Barnett was in custody at the time he gave a statement to Sgt. Lewis about the circumstances that led Barnett to contact the police and request their presence at their home.  At most, Sgt. Lewis merely directed Barnett verbally to remain outside on the porch on his home so that the other officers could obtain a statement from his daughter K.B. while father and daughter were separated.  Otherwise, the record gives no indication that Sgt. Lewis placed any other restrictions on Barnett's movement, or that Barnett was ever informed that he was not free to leave the scene, as opposed to reentering his home while his daughter gave her statement.

*Miranda* warnings are only required when there has been such a restriction on a person's freedom as to render him "in custody."  *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).  While the circumstances in each case will control the determination of whether a suspect is in custody for the purposes of receiving a *Miranda* warning, the ultimate inquiry is whether there is a "formal arrest or restrain on freedom of movement of a degree associated with the formal arrest."  *California v. Beagler*, 463 U.S. 1121, 1125 (1983) (quoting *Mathiason*, 429 U.S.

at 495).

No formal arrest occurred under the circumstances, nor was there any restraint on Barnett's freedom of movement to a degree associated with a formal arrest. For the safety of his own daughter, Barnett was ordered by Sgt. Lewis to remain outside on the front porch of his home. That was the only restriction whatsoever placed on Barnett. Therefore, he cannot show the existence of any genuine issue of material fact that he was in custody. As consequence, his *Miranda*-based claim is also subject to dismissal on the Defendants' cross-motion for summary judgment.

### e.        *The Fourth Amendment Claims.*

Finally, the Court turns to Barnett's Fourth Amendment claims. These claims involve the warrantless entry to his home when police responded to Barnett's domestic disturbance call, the presence of at least one unnamed police officer outside the kitchen of the home, when Barnett's daughter was escorted to her bedroom and that of her sister while collecting her clothes prior to leaving with her mother, and the temporary removal of a bag of the daughter's clothing from the home without Barnett's prior approval, as opposed to his subsequent approval after inspection of the bag. Upon consideration, all of these Fourth Amendment claims are subject to summary judgment in favor of the Defendants based on the undisputed material facts of record.

First, the warrantless entry into Barnett's home was made with Barnett's knowledge and consent. It was Barnett who summoned the police on the evening of July 16, 2012, after being involved with an altercation with his daughter in the home. The presence of

police in the home was directly the result of Barnett's own conduct. His only response to the presence of police in the home was to expressly limit their warrantless presence to the kitchen area.

A plaintiff who voluntarily permits the police or other state actors into his or her home has no viable §1983 claim for violation of the Fourth Amendment. *See Clemente v. Vaslo*, 679 F.3d 482, 489 (6th Cir. 2012) (City employee who voluntarily allowed his supervisor and police officer to enter his home to inspect water meter failed to state a Fourth Amendment claim.). A warrantless search pursuant to consent falls within one of the well-established exceptions to the search warrant requirement so long as the consent was voluntary and not the product of duress or coercion. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Barnett consequently cannot complain that the police, whom he summoned, entered his home to investigate the domestic disturbance that he called them about earlier that evening. No search warrant was required for police to enter the home under such circumstances, where plaintiff by his own conduct consented to their presence in his home.

The only question in this regard is whether that consent was violated when an unnamed police officer escorted K.B. as she collected her personal clothing in preparation to leave with her mother that evening. The Court finds that the answer to this question is largely irrelevant given that Barnett did not name any other individual defendant police officers in his complaint. Sgt. Lewis is the only individual defendant officer named. Lewis, as the facts reveal, did not accompany K.B. when she collected her clothing from the two upstairs bedrooms, her sister's bedroom and her own. Barnett therefore cannot state a claim against Lewis in this regard since Lewis was not involved in escorting K.B., even if we were to assume that such an escort

exceeded the boundaries of Barnett's consent. In other words, Barnett has not named the allegedly responsible individual for this claimed Fourth Amendment violation. His Fourth Amendment claim in this regard therefore is subject to dismissal as Sgt. Lewis is not the proper defendant.

This reasoning brings us to Barnett's next Fourth Amendment claim. This claim centers upon the alleged removal of certain personal property from his home. During the investigation, Sgt. Lewis determined that K.B. would not be safe in Barnett's home, and that she would have to be removed to prevent further altercation. To facilitate her removal, K.B.'s mother, herself a police officer, was summoned to the scene. K.B. was permitted to gather her personal clothing in a garbage bag, which was placed in the police cruiser parked on the property while waiting for her mother's arrival. Barnett removed the bag from the cruiser and after a brief verbal confrontation, was permitted to inspect the contents of the bag. He then permitted K.B. to leave with certain items of clothing from the bag after he inspected its contents.

These undisputed facts reveal no violation of the Fourth Amendment. First, the contents of the garbage bag were not Barnett's personal property as he contends. Rather, the contents consisted of clothing of K.B., or her older sister. Barnett does not contend and the record does not show that any of his own property was discovered in the bag upon his inspection. Therefore, Barnett arguably did not have standing to contest the removal of property that was not his own, but rather belonged to his daughters.

The Fourth Amendment exists to protect people, not merely places. *United States v. Davis*, 430 F.3d 345, 359-60 (6th Cir. 2005). Consequently, an individual will lack standing to file a civil rights action seeking relief for wrongfully seized property when that property belongs

to another person.  *See Hayes v. Carter*, Case No. 96-2209, 1997 WL 685420 at *1-2 (6th Cir. Oct. 29, 1997) (Plaintiff's claim that her Fourth Amendment rights were violated when a deputy sheriff seized property outside the scope of a warrant failed for lack of standing where the plaintiff could not show that she owned the seized property.); *Gunn v. Kalamazoo KVET*, Case No. 1:10-CV-591, 2011 WL 529694 at *7 (W.D. Mich. Jan. 10, 2011) (Plaintiff lacks standing to bring §1983 claim for the unconstitutional seizure of property which belonged to his wife who was not a party to the lawsuit).  *See gen., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

 Even were the Court to assume that Barnett has standing to bring a §1983 claim for the seizure of another individual's personal property, Barnett still cannot survive the Defendants' motion for summary judgment for another important reason relating to the fundamental nature of the Fourth Amendment.  The Fourth Amendment exists to protect persons against "unreasonable" search and seizure.  U.S. Const. Amend. IV.  A seizure of property for the purpose of the Fourth Amendment "occurs when 'there is some meaningful interference with an individual's possessory interest in that property.'"  *Porter v. Jewell*, 453 Fed.Appx. 934, 936-37 (11th Cir. 2012) (quoting *Soldal v. Cook County, Ill*, 506 U.S. 56 (1992)).

 The Fourth Amendment, however, is not concerned with *de minimis* violations. *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977).  What occurred in the present case, at the very most, was that certain clothing was placed in a bag that was briefly set inside a police cruiser parked on Barnett's own property.  Barnett retrieved the bag from the cruiser and was immediately thereafter permitted to inspect the bag.  After he inspected the bag and approved its contents, Barnett then permitted the bag to be taken from his property with the items of clothing

that he approved.

In other words, the personal property in the bag was never removed from Barnett's real property without his approval, and was only located in the cruiser for several minutes at most before Barnett removed it himself. He therefore suffered no meaningful dispossession or other interference with the property, assuming that he had an interest therein.

Such a minor, incidental interference is not the basis for a viable §1983 Fourth Amendment claim. *See Porter*, 453 Fed. Appx. at 937; *Burch v. City of Florence, Ala*, Case No. CV-10-S-2417-NW, 2012 WL 6610422 (N.N.D. Ala. Dec. 17, 2012) (Deletion of photograph by police from plaintiff's camera was such a *de minimis* violation of the plaintiff's Fourth Amendment rights that the defendant officers could not be held liable under §1983); *Kelley v. Rogers*, Case No. 1:07-CV-1573, 2012 WL 2153796 at *6 n. 10 (M.D. Pa. June 13, 2012) (acknowledging that an argument could be made that the few seconds that the plaintiff was deprived of his camera does not rise to the level of a Fourth Amendment violation).

### f. *The Excessive Force Claim.*

The final claim to be considered is Barnett's excessive force claim. It arises from the alleged incident when Sgt. Lewis placed his hand in the center of Barnett's chest to prevent him from returning to the house with the garbage bag that contained K.B.'s clothing, after Barnett recovered the bag from the police cruiser. Barnett claims that Sgt. Lewis placed his hand on Barnett's chest briefly in an effort to keep Barnett from walking up the hill to his home. Sgt. Lewis, for his part, denies that he ever touched Barnett during this portion of their interaction. For the purpose of our analysis we assume that Sgt. Lewis touched Barnett's chest by placing his

hand upon it briefly.

A claim of excessive force brought pursuant to 42 U.S.C. §1983 is properly analyzed under the Fourth Amendment. *Graham v. Conor*, 490 U.S. 386, 395 (1989) ("All claims that law enforcement officers have used excessive force ... in the course of an arrest, an investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach."). Consequently, our responsibility is to determine whether Barnett has alleged facts that are sufficient to demonstrate that he was seized within the meaning of the Fourth Amendment and, if so, whether his seizure could be considered to be unreasonable by a jury. *Soucher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008).

A seizure under *Graham* will have occurred so as to trigger the protections of the Fourth Amendment when a Government actor, by means of physical force, or show of authority, in some fashion restrains the liberty of a citizen. *Id*. at 395 n.10. *See also, California v. Hodari D.*, 499 U.S. 621, 624 (1991) (The word seizure means taking possession and the mere grasping or application of physical force with lawful authority is considered sufficient); *Adams v. City of Auburn Hills*, 336 F.3d 515, 519 (6th Cir. 2003) (A seizure that triggers the protection of the Fourth Amendment occurs only when a Government actor by means of physical force or show of authority in some way restrains the liberty of a citizen.) *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (A person has been seized within the meaning of the Fourth Amendment if under the circumstances a reasonable person would have believed that he was not free to leave).

In this instance, we assume that the placement of Sgt. Lewis's hand on the chest of Barnett, without any other display or use of physical force, is sufficient to constitute a seizure

under the above-cited case law.  Thus, the next question is whether the use of force used by Sgt.

Lewis was "reasonable" under the Fourth Amendment.  To answer this question we must balance

the nature of the intrusion by Sgt. Lewis against the countervailing governmental interest.

*Soucher*, 540 F.3d at 455 (citing *Graham*, 490 U.S. at 396).  In this respect, the focus falls upon

"objective reasonableness" and not the underlying intent or motivation of the officer involved.

*Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004).  The Court therefore must consider the

level of force used, severity of the challenged conduct at issue, and whether the Plaintiff posed

an immediate threat to the safety of the officers or others.

Here, the Court concludes that no reasonable juror could find under the facts as

assumed to the benefit of Barnett that Sgt. Lewis used more force than was necessary.  *See*

*Phelps v. Cory*, 286 F.3d 295, 301 (6th Cir. 2002).  Barnett had at that point begun to actively

interfere with the efforts of Sgt. Lewis and the other LMPD officers to diffuse the situation by

removing K.B. from the home.  K.B. was then located in the police cruiser where her personal

possessions had been placed in the garbage bag in preparation for her departure with her mother.

Barnett, acting without prior notice or approval, simply walked over to the police cruiser and

removed the garbage bag containing K.B.'s clothing.  He then attempted to walk away leaving

K.B. with no change of clothes.

At most, Sgt. Lewis at this point stepped in front of Barnett and placed his hand

on Barnett's chest in an effort to prevent him from leaving with K.B.'s clothing.  Sgt. Lewis took

no other action, and Barnett does not allege that Sgt. Lewis struck him or used any other degree

of physical force than merely placing his hand upon Barnett's chest.  Under such circumstances

no facts have been shown that would allow a jury to conclude that Sgt. Lewis used more force

than was reasonably necessary to take control of the situation.

Barnett does not allege that he suffered any injuries, temporary or permanent. The contact between Sgt. Lewis's hand and Barnett's chest was apparently no more than momentary, assuming that such contact even occurred. Given these circumstances, it is simply impossible that a reasonable juror could conclude that excessive force in violation of the Fourth Amendment was used against Barnett. *See Rosenfeld v. Egy*, Case No. 01-10730-DPW, 2003 WL 222119 at *4 (D. Mass. 2003) (conduct of police officer in striking another police officer on the chest with his open hand during an argument did not constitute excessive force so as to be a cognizable constitutional tort under §1983 for the conduct interfered with no civil rights of the plaintiff and caused no physical harm, injury or consequence), *affirmed*, 346 F.3d 11 (1st Cir. 2003). *Zavala v. Parks*, 124 Fed. Appx. 527, 528 (9th Cir. 2005) (Defendant police officer's use of a baton to push plaintiff away after plaintiff refused to obey the officer's order to disperse was reasonable and did not rise to the level of a constitutional violation for the purpose of the plaintiff's §1983 excessive force claim).

## RECOMMENDATION

For the reasons set forth above, the Magistrate Judge recommends that the cross-motion of the Defendants for summary judgment be **GRANTED** and that the Plaintiff's complaint be **DISMISSED WITH PREJUDICE**. The Magistrate Judge further recommends that the motion of the Plaintiff for summary judgment be **DENIED**.

**<u>NOTICE</u>**

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd.*, 474 U.S. 140 (1985). 28 U.S.C. § 636(b)(1)(c); Fed.R.Civ.P. 72(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

Copies to Counsel of Record